UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MELISSA TUTTLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-CV-183 JD-RBC |
| | ) |
| SALLIE MAE, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This case arises from actions taken by the Defendant Sallie Mae, Inc. ("Sallie Mae"), to collect on a student loan incurred by the Plaintiff Melissa Tuttle. Ms. Tuttle alleges that Sallie Mae's collection calls to her cellular telephone violated the Telephone Consumer Protection Act ("TCPA"). In lieu of answering the complaint, Sallie Mae moved to stay the litigation and compel arbitration based on an alleged arbitration agreement between the parties. [DE 9.] Ms. Tuttle filed a response in opposition [DE 12] and Sallie Mae filed a reply in support [DE 13]. For reasons stated below, the Court **GRANTS** Sallie Mae's Motion to Compel Arbitration and Stay Litigation.

### I. Factual Background

On September 12, 2007, Ms. Tuttle signed a College Advantage Loan Program Application and Promissory Note ("Note") in order to obtain a loan to help pay for her education. [DE 10-1 at 5–17.] The Note contains many terms and conditions. Some of the terms are intended to apply to Ms. Tuttle; others were form terms applying to borrowers from other states. [*See* DE 10-1 at 14–15.] One of the terms relevant to this case is an arbitration clause, which provides, in part:

**S. ARBITRATION AGREEMENT**

To the extent permitted under federal law, you and I agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms and conditions. This Arbitration Agreement is part of the College Advantage Loan Promissory Note **("Note")**.

1. **RIGHT TO REJECT: I may reject this Arbitration Agreement by mailing a rejection notice to P.O. Box 147027 Gainesville FL, 32608 within 60 days after the date of my first disbursement. Any Rejection Notice must include my name, address, telephone number and loan or account number.**

2. **IMPORTANT WAIVERS: If you or I elect to arbitrate a Claim, you and I both waive the right to: (1) have a court or a jury decide the Claim . . . . Other rights are more limited in arbitration than in court or are not available in arbitration.**

   . . .

4. **"CLAIM"** means any legal claim, dispute or controversy between you and me that arises from or relates in any way to the Note, including any dispute arising before the date of this Arbitration Agreement and any dispute relating to: (1) fees, charges or other provisions of the Note; (2) any application, disclosure or other document relating in any way to the Note or the transactions evidenced by the Note; (3) any insurance or other service or product offered or made available by or through you in connection with the Note, and any associated fees or charges; and (4) any documents, instruments, advertising or promotional materials that contain information about the Note or any associated insurance or other service or product. This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or the Note; disputes involving alleged fraud or misrepresentation, breach of contract, negligence or violation of statute, regulation or common law; and disputes involving requests for injunctions or other equitable relief. . . .

[DE 10-1 at 16–17 (emphasis in original).]¹  After the Note was signed, Sallie Mae disbursed funds to Ms. Tuttle in accordance with the Note.  [DE 10-1 at 3.]  Sallie Mae's records do not show that Ms. Tuttle ever exercised her right to reject the arbitration agreement.  [DE 10-1 at 3.]

On June 10, 2013, Ms. Tuttle filed a complaint in this Court against Sallie Mae [DE 1].  Ms. Tuttle asserts that Sallie Mae made numerous collection calls to her cellular telephone in an attempt to collect on the loan and that such calls violate the TCPA, 47 U.S.C. § 227 *et seq*.  [DE 1 at 2–3.]  In lieu of answering the complaint, Sallie Mae filed its Motion to Compel Arbitration and Stay Litigation, which is now ripe for decision.

## II.  Analysis

The Federal Arbitration Act ("FAA") provides that an arbitration agreement in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  If a suit is brought upon an issue that the parties have agreed to arbitrate, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Further, the Court shall order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.  The FAA creates "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012).  "That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'"  *Id.* (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

---

¹ Ms. Tuttle's response purports to quote from the arbitration clause [DE 12 at 9], but the language included by Ms. Tuttle is different than the arbitration clause actually included in the Note.  The Court looks to the actual language of the Note to interpret the arbitration clause.

3

In determining whether Ms. Tuttle's claim is arbitrable, this Court is prohibited from reviewing the merits of the dispute and must instead constrain its inquiry to "(1) whether a valid agreement to arbitrate exists and (2) whether the scope of the parties' dispute falls within that agreement." *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006). Sallie Mae argues that both conditions exist. Ms. Tuttle denies both and raises the additional argument that even if a valid arbitration agreement exists, it should not be enforced because Congress intended that violations of the TCPA should be heard solely in a judicial forum. The Court will consider each of the issues in turn.

**A.    The Validity of the Arbitration Agreement**

Whether a valid arbitration agreement exists is a question of state contract law. *Gore v. Alltel Commc'ns*, 666 F.3d 1027, 1032 (7th Cir. 2012). Neither party addresses the question of what substantive law should apply to the determination of the validity of the agreement, nor does either party cite any state cases in arguing whether the arbitration agreement is valid. In this case, the Note contains a choice of law provision which states "I understand that the Lender is located in the State listed in the introductory paragraph of this Note and this Note will be entered into in the same State. Consequently, the provisions of this Note will be governed by federal laws and the laws of that State to the extent not preempted, without regard to conflict of law rules." [DE 10-1 at 15.] Indiana courts will generally apply a valid choice of law provision contained within a contract to determine the substantive law governing the contract. *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1158 (Ind. Ct. App. 2010). However, the introductory paragraph referenced in the choice of law provision (which was to identify the substantive law applicable to the Note) appears to be blank in Ms. Tuttle's Note. [DE 10-1 at 12.] Accordingly,

the Note contains no valid choice of law provision and the Court will apply Indiana's other choice of law rules.

Indiana applies the "most intimate contacts" test when determining choice of law in contract actions. *Schaffert by Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 232 (Ind. Ct. App. 1997). That rule requires the Court to "consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in more intimate contact." *Id.* (quoting *W.H. Barber Co. v. Hughes*, 63 N.E.2d 417, 423 (Ind. 1945)). Factors to be considered include "(1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.*

Here, the parties have provided little information regarding the contacts between the parties and any state. Ms. Tuttle acknowledges that she is a resident of Indiana. [DE 12 at 3.] In addition, it appears that Ms. Tuttle was located in Indiana when she signed the Note and that the loan amounts were disbursed to an educational institution in Indiana.[2] In light of these likely contacts to Indiana and the lack of any argument that another state's substantive law should apply, the Court will apply the substantive law of Indiana in determining the validity of the arbitration agreement.

In support of its argument that the Note contains a valid arbitration agreement, Sallie Mae attached the Note signed by Ms. Tuttle, which does contain a section entitled "Arbitration Agreement." [DE 10-1 at 16.] Ms. Tuttle argues, in opposition, that Sallie Mae "does not present any evidence or documentation showing that Plaintiff signed or executed any document

---

[2] The Note indicates that Ms. Tuttle was enrolled full-time at ITT Technical Institute, but does not indicate the location of the campus. [DE 10-1 at 5.] Ms. Tuttle currently lives in Auburn, Indiana [DE 1 at 1], which is in reasonably close proximity to an ITT Technical Institute campus in Fort Wayne, Indiana.

5

consenting to arbitration nor does Defendant present any evidence or documentation that the arbitration clause was ever brought to Plaintiff's attention upon receipt of the multi-page College Advantage Loan Program." [DE 12 at 3.] However, Sallie Mae's attachment of the signed Note is sufficient evidence that it was signed or executed by Ms. Tuttle. Further, it is well established in Indiana that an individual "is presumed to understand the documents which he or she signs and cannot be released from the terms of a contract due to his or her failure to read the documents." *Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858, 869 (Ind. Ct. App. 2002) (finding a covenant not to compete valid and reversing district court's failure to grant a preliminary injunction enforcing the covenant). Therefore, Ms. Tuttle is presumed to have read and understood the arbitration agreement at the time she signed the Note.

Ms. Tuttle further takes issue with the fact that the Note contains terms and conditions not relevant to Ms. Tuttle and alleges that Sallie Mae "appears to engage in the practice of specifically providing Plaintiff and other consumers with the Note documentation without informing its customers of the arbitration clause buried in the multipage document." [DE 12 at 3–4.] Ms. Tuttle's argument is that the arbitration agreement is unconscionable.[3]

To be unconscionable under Indiana law, a contract "must be such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." *Roddie v. N. Am. Manufactured Homes, Inc.*, 851 N.E.2d 1281, 1285 (Ind. Ct. App. 2006) (finding arbitration agreement not unconscionable). There are two types of unconscionability: substantive and procedural. *See DiMizio v. Romo*, 756 N.E.2d 1018, 1023

---

[3] The Supreme Court has distinguished between two different types of challenges to the validity of an arbitration agreement: challenges to the contract as a whole and challenges to just the agreement to arbitrate. *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010). This Court may only decide a challenge to the arbitration agreement itself. If a challenge pertains to the contract as a whole, then it is for an arbitrator to decide. *Id.* Ms. Tuttle does not make clear whether she is challenging the arbitration agreement alone or the contract as a whole. However, out of an abundance of caution, the Court treats the challenge as one to just the arbitration provision and analyzes that challenge accordingly.

(Ind. Ct. App. 2001) (citing *Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 951 (Ind. Ct. App. 1982)). "Substantive unconscionability refers to oppressively one-sided and harsh terms of a contract, while procedural unconscionability involves the manner and process by which the terms become part of the contract." *Id*.

Ms. Tuttle cites no law in support of an argument of unconscionability and has not established that the arbitration agreement is either procedurally or substantively unconscionable. The Court notes that Ms. Tuttle specifically had the option to opt-out of the arbitration agreement but she did not to do so. *See, e.g.*, *Jones v. Sallie Mae, Inc.*, No. 3:13-cv-837, 2013 WL 6283483, at *7 (M.D. Fla. Dec. 4, 2013) (finding ability to opt-out of arbitration agreement "vitiates any conceivable claim that the circumstances under which [the borrower] initially signed the Agreement were procedurally unfair."). Additionally, the arbitration agreement is not hidden in the Note. Instead, several sections of the arbitration agreement are bolded and capitalized so as to call attention to the provision. Finally, Ms. Tuttle has provided no argument as to any unfair terms contained within the arbitration agreement. Accordingly, the Court finds that the arbitration agreement is not unconscionable and is valid against Ms. Tuttle.

**B.     The Scope of the Arbitration Agreement**

After determining that the arbitration agreement is valid, the Court would normally turn to the question of whether the parties' dispute is within the scope of the arbitration agreement. However, in this case the Court need not do so. That is because the parties contracted in their arbitration agreement that the arbitrators would decide any "disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or the Note." [DE 10-1 at 17.] The Supreme Court has recognized that parties can agree to arbitrate such "gateway" issues, such as whether a dispute falls within the scope of an arbitration agreement. *Jackson*, 130 S. Ct.

at 2777–78 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). Accordingly, based on the plain language of the parties' agreement in the Note, whether a TCPA claim falls within the scope of the arbitration agreement is for the arbitrator, not this Court, to decide.

Even if the parties had not agreed to arbitrate any issues regarding the scope of the arbitration agreement, the Court would still find Ms. Tuttle's claim to fall within the scope of the arbitration agreement. Once it is clear, as it is in this case, that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law. *Gore*, 666 F.3d at 1032. "To this end, a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 1032–33 (internal quotations omitted).

Here, the arbitration agreement is very broad, covering "any legal claim, dispute or controversy between [Sallie Mae] and [Ms. Tuttle] that arises from or relates in any way to the Note." [DE 10-1 at 17.] It also includes "disputes involving . . . breach of statute." *Id.* The Seventh Circuit has repeatedly construed the phrases "arising out of" and "relating to" in arbitration agreements very broadly. *See Gore*, 666 F.3d at 1033 ("we read both 'arising out of' and 'relating to' broadly.") (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc*., 174 F.3d 907, 909 (7th Cir. 1999)). It has also emphasized that the use of such broad language raises a presumption of arbitrability, requiring that any doubts regarding whether the dispute is arbitrable be resolved in favor of arbitration. *Id.* at 1033–34.

Based on this broad construction of the arbitration agreement and the presumption that disputes are to be arbitrated, if it reached the issue the Court would find that the dispute is within the scope of the arbitration agreement. It is a plausible interpretation of the arbitration agreement that disputes regarding a breach of statute are to be submitted to arbitration. Further, Ms. Tuttle's TCPA claims relate in some way to the Note in that the alleged violations arose from an attempt to collect on the debt incurred under the Note. Accordingly, the Court cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *Gore*, 666 F.3d at 1032–33, and thus would presume that the issues raised by Ms. Tuttle's complaint are subject to arbitration.

The Court rejects Ms. Tuttle's argument that the TCPA claim is either collateral to the Note or arises independently from the Note. In support of this argument, Ms. Tuttle cites several cases from outside this circuit, including cases from the Second, Ninth, and Tenth Circuits. *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995) (finding certain claims not subject to arbitration); *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 924 (9th Cir. 2011) (finding claims peripheral to agreement not subject to arbitration); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995) (finding antitrust claims exceeded the scope of the contract and were not subject to arbitration). The Court notes that none of these cases is binding on this Court. In addition, each of those cited cases is distinguishable from this one.[4]

---

[4] In *Collins*, there were two contracts at issue—one with an arbitration clause and one without—and the claims not subject to arbitration were based on the contract without an arbitration clause. *Collins*, 58 F.3d at 20–21 ("The question is not whether the second and third claims arise under the 1998 Agreement, which has no arbitration clause; the question is whether these claims plead conduct that 'aris[es] out of or [is] related to' the 1977 Contracts, which does have such a clause."). In *Cape Flattery*, the arbitration clause at issue covered any claims "arising under" the contract, which is less broad than the "arises from or relates in any way to the Note" language included in the arbitration clause in this case. *Cape Flattery*, 647 F.3d at 921 ("we held that the phrase 'arising under' in an arbitration agreement should be interpreted narrowly"). Finally, in *Coors*, the claims at issue were antitrust claims

9

Ms. Tuttle does cite one case from the Seventh Circuit in support of her argument that the TCPA claim does not relate to the Note. *Smith v. Steinkamp*, 318 F.3d 775, 776–77 (7th Cir. 2003). The Court does not view *Smith* as factually analogous to this case. Unlike this case, the plaintiffs in *Smith* had signed multiple contracts with the defendants, some of which contained arbitration agreements and some of which did not. The Seventh Circuit looked to whether or not the arbitration agreement actually signed by the plaintiffs extended to actions arising from the later contract that did not include an arbitration provision. *Id.* at 778 ("All that is certain is that the waiver agreement, read sensibly as a whole, with careful attention to the relation among the clauses, does not apply to future disputes, including disputes over future loan agreements.").[5] Instead of relying on *Smith*, the Court looks to other Seventh Circuit cases in which the court has repeatedly held that an arbitration agreement may reach disputes "having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Gore*, 666 F.3d at 1033 (7th Cir. 2012) (quoting *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir.1993) (internal quotations omitted)). Therefore, if it needed to reach this issue, the Court would find that Ms. Tuttle's TCPA claims have their origin or genesis in the contract because Sallie Mae's efforts to collect on the Note gave rise to the TCPA claims.

**C.     The TCPA's Text Does Not Reflect Congressional Intent to Preclude Arbitration**

Finally, the Court addresses Ms. Tuttle's argument that the normal federal presumption of arbitrability should not apply in this case because the text of the TCPA shows that Congress

---

against two companies, with only one of whom the plaintiff had a contract containing an arbitration agreement. The claims were thus far more removed from the contract than the TCPA claim in this case. *Coors*, 51 F.3d at 1516.

[5] If anything, *Smith* may hurt Ms. Tuttle's case, since it notes that the district court compelled arbitration of a RICO claim arising out of a payday loan agreement containing a valid arbitration agreement. *Id.* at 777 ("But the other two plaintiffs signed the waiver agreement every time they borrowed from Instant Cash, and the district judge held that they were bound by the agreement and so had to arbitrate their RICO and other claims.").

intended for violations of the TCPA to be heard in a judicial forum.  Ms. Tuttle's argument is basically that Congress used the word "court" throughout the TCPA and, therefore, an arbitrator should not hear a TCPA claim.  In making this argument, she relies on a district court ruling from another circuit, in which the court found that Congress intended to preclude arbitration in a different federal statute that uses the phrase "right to sue." *Alexander v. U.S. Credit Mgmt.*, 384 F. Supp. 2d 1003 (N.D. Tex. 2005) (voiding arbitration clause for claims brought under Credit Repair Organizations Act).

Ms. Tuttle has not succeeded in establishing that Congress intended to preclude parties from agreeing to arbitrate TCPA claims.  As an initial matter, the district court's reasoning in *Alexander* was recently rejected by the Supreme Court.  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012).  In *CompuCredit*, the Court considered the same issue as in *Alexander* regarding whether the Credit Repair Organizations Act showed a Congressional intent to preclude arbitration.  Though it did not cite *Alexander* specifically, the Supreme Court squarely rejected the rationale employed in *Alexander*.  The Court held that the use of the terms "action," "class action," and "court" were not sufficient to infer an intent to preclude arbitration but rather were "utterly commonplace" phrases used to describe civil actions.  *Id.* at 670.  The Court stated that if such words were enough to preclude arbitration "valid arbitration agreements covering federal causes of action would be rare indeed." *Id.*

This Court finds no basis to distinguish the arguments made by Ms. Tuttle from the arguments rejected by the Supreme Court in *CompuCredit*.  Accordingly, Ms. Tuttle has not shown a Congressional intent to preclude arbitration of TCPA claims.  The Court notes that this decision is consistent with at least one other decision that recently rejected a similar challenge to

11

arbitration of TCPA claims. *See, e.g., Cyganiewicz v. Sallie Mae, Inc.*, No. 13-40067, 2013 WL 5797615, at *5–6 (D. Mass. Oct. 24, 2013).

### III. Conclusion

As explained above, the Court finds that the parties have a valid arbitration agreement, in which the parties have delegated to the arbitrator any disputes regarding the scope of the arbitration agreement. Accordingly, the Court **GRANTS** Sallie Mae's Motion to Compel Arbitration and Stay Litigation. Pursuant to 9 U.S.C. § 3, this case is **STAYED** pending the conclusion of the arbitration. Pursuant to 9 U.S.C. § 4, Ms. Tuttle is **ORDERED** to participate in arbitration, consistent with the terms of the signed arbitration agreement. The parties are **ORDERED** to file with this Court a report on the status of the arbitration no later than September 2, 2014.

SO ORDERED.

Entered: February 11, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court